UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

─────────────────────────────────

GLORIA CUKAR,

                              Plaintiff,

            v.

COMPASS GROUP, USA, INC., et al.,

                              Defendants.

No. 21-CV-7626 (KMK)

OPINION & ORDER

Appearances:

Andrew G. Finkelstein, Esq.
Brian D. Acard, Esq.
Lawrence D. Lissauer, Esq.
Sharon A. Scanlan, Esq.
Finkelstein & Partners
Newburgh, NY
*Counsel for Plaintiff*

William Edward Vita, Esq.
Joseph Angelo Iemma, Esq.
Shook Hardy & Bacon, LLP
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Plaintiff Gloria Cukar ("Plaintiff"), a former MidHudson Regional Hospital ("MHRH")

employee, brings this Action, not against the hospital, but against the one of the hospital's

service providers, Morrison Management Specialists, Inc. ("Morrison"), and its parent company,

Compass Group USA, Inc. ("Compass") (together, "Defendants"), alleging state law negligence

claims related to a slip and fall incident in the cafeteria at MHRH.  (*See generally* Compl. (Dkt.

No. 1-1).)  Before the Court is Defendants' Motion for Summary Judgment (the "Motion").

(Not. of Mot. (Dkt. No. 54).)  For the reasons that follow, Defendants' Motion is granted in its entirety.

## I.  Background

### A.  Factual Background

The facts are taken from the Parties' statements pursuant to Local Civil Rule 56.1, specifically, Defendants' 56.1 Statement ("Defs.' 56.1"), (Dkt. No. 55-1); Plaintiff's Response to Defendants' 56.1 Statement and Statement of Additional Facts ("Pl.'s 56.1"), (Dkt. No. 57-2); Defendants' Reply 56.1 Statement ("Defs.' Reply 56.1"), (Dkt. No. 60).  Additionally, where necessary, the Court cites directly to the admissible evidence submitted by the Parties.  The facts are recounted "in the light most favorable to" Plaintiff, the non-movant.  *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021).  The facts as described below are undisputed unless otherwise noted.[1]

---

[1] Where the Parties "identify disputed facts but with semantic objections only or by asserting irrelevant facts, which do not actually challenge the factual substance described in the relevant paragraphs, the Court will not consider them as creating disputes of fact."  *N.J. v. N.Y.C. Dep't of Educ.*, No. 18-CV-6173, 2021 WL 965323, at *2 n.1 (S.D.N.Y. Mar. 15, 2021) (alteration adopted) (internal citation omitted); *see also Nimkoff v. Drabinsky*, No. 17-CV-4458, 2021 WL 4480627, at *1 n.2 (E.D.N.Y. Sept. 30, 2021) ("[T]o the extent a party's Rule 56.1 statement improperly interjects arguments and/or immaterial facts in response to facts asserted by the opposing party without specifically controverting those facts [with admissible evidence], the [c]ourt has disregarded the statement." (alteration adopted) (internal quotation marks and citation omitted)); *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) ("Many of [the] [p]laintiff's purported denials—and a number of [the plaintiff's] admissions—improperly interject arguments and/or immaterial facts in response to facts asserted by [the][d]efendants, often speaking past [the] [d]efendants' asserted facts without specifically controverting those same facts. . . .  [A] number of [the] [p]laintiff's purported denials quibble with [the] [d]efendant['s] phraseology, but do not address the factual substance asserted by [the] [d]efendants." (internal citations omitted)).

1.  Parties

Plaintiff is a former MHRH employee, who worked there as a director of external relations, coordinating community engagement for the hospital, from 2015 until she retired in December of 2020.  (Defs.' 56.1 ¶¶ 2, 10.)  Defendant Morrison is a food services contractor that operated at MHRH, providing food-related services and managers for MHRH's cafeteria and cafeteria staff.  (*Id.* at ¶ 3.)  Defendant Compass is Morrison's parent company.  (*See* Defs.' Mem. of Law in Supp. to Mot. for Summ. J. ("Defs.' Mem.") at 1 n.1 (Dkt. No. 55).)

2.  Cafeteria Staff and Policies

The cafeteria workers at MHRH were union employees, employed directly by MHRH, not Morrison.  (Defs.' 56.1 ¶¶ 4, 19.)  Further, the employees received training from both MHRH and Morrison.  (*Id.* at ¶ 19.)  New cafeteria workers were partly trained and supervised by more experienced cafeteria workers (i.e. shadowing more experienced workers), and MHRH could transfer employees from other areas of the hospital to work in the cafeteria.  (*Id.* at ¶ 24.)  Moreover, the MHRH food service workers wore uniforms selected by MHRH.  (*Id.*)

 MHRH was directly involved in the hiring, firing, and staffing assignments for its cafeteria workers.  (*Id.* at 20.)  Morrison also participated, but Morrison could not hire, fire, or reassign the hospital's workers without MHRH agreeing to do so.  (*Id.*)  MHRH determined the number to cafeteria workers and could increase or decrease the number of workers.  (*Id.* at 21.)  The number of Morrison managers was approximately six and the number of MHRH food service workers for the cafeteria was approximately fifty to sixty.  (*Id.*)

Jason Cannon ("Cannon") worked as a retail manager for Morrison at MHRH from Fall of 2018 through December 2020 and previously worked directly for MHRH from 2012 until 2018.  (*Id.* at ¶ 15.)  Cannon received training from both MHRH and Morrison and was familiar

with the general operation of the cafeteria at MHRH in the fall of 2019.  (*Id.*)  As retail manager

for Morrison, Cannon would help oversee the cafeteria and MHRH's cafeteria staff.  (*Id.* at ¶ 16.)

Patricia Horton ("Horton") worked as a catering manager and retail manager for Morrison at

MHRH since 2017 and previously worked directly for MHRH from 2005 until 2017.  (*Id.* at ¶

17.)  In the fall of 2019, Ms. Horton assisted Mr. Cannon in overseeing the cafeteria.  (*Id.*)

In addition, despite Morrison managers being onsite, MHRH cafeteria staff could

perform specific tasks, such as cleaning, if it was needed.  (*Id.* at ¶ 23.)  When spills occurred

inside the cafeteria, a wet floor sign would be placed near the spill.  (*Id.* at ¶ 24.)  MHRH owned

the wet floor signs in the cafeteria and could move the signs as it saw fit.  (*Id.* at ¶ 23.)  If solid

food debris were present, they would be swept up with a broom.  (*Id.* at ¶ 24.)  Liquid spills

would be wiped up and/or mopped, but not all spills required mopping.  (*Id.*)  It took no more

than ten minutes to prepare a mop and bucket for use in the cafeteria.  (Defs.' Reply 56.1 ¶ 25,

Pl.'s 56.1 ¶ 25.)  The process involved going to the supply closet, filling a bucket with water and

cleaning solution, gathering materials, and walking back to the cafeteria.  (Defs.' 56.1 ¶ 25.)

MHRH did not provide or ask Morrison to provide a fulltime, dedicated porter to monitor and

clean the cafeteria.  (*Id.*)

Plaintiff heard at work meetings that Morrison provided food services at MHRH but did

not recall the context of those discussions.  (*Id.* at ¶ 11.)  Plaintiff was not aware of Morrison's

food services contract with MHRH at the time of her accident.  (*Id.*)

### 3.  Slip and Fall Incident

On October 2, 2019, around 1:00PM, Plaintiff slipped and fell on alleged residue from

spilled food near the entrance to the cafeteria at MHRH.  (Defs.' 56.1 ¶ 1).  The food spill

occurred approximately five minutes and thirty-nine seconds prior to Plaintiff's fall.  (*Id.* at ¶ 5.)

4

MHRH cafeteria workers placed a wet floor sign next to the spill approximately fifty-six seconds after the spill. (*Id.* at ¶ 6.) Plaintiff disputes this statement to the extent that the cafeteria workers placed the yellow floor sign without involvement by Defendant's employee. (Pl.'s 56.1 ¶ 6.) Specifically, Plaintiff claims that the evidence establishes that Cannon oversaw and/or instructed about the placement of the yellow floor sign. (*Id.*) Further, Plaintiff admits that there was a yellow floor sign placed next to the spill, but claims that the evidence does not establish that the sign stated "wet floor." (*Id.*) Plaintiff entered the cafeteria near the spill and yellow floor sign approximately thirty seconds after the yellow floor sign was placed. (Defs.' 56.1 ¶ 7.) An MHRH cafeteria worker began sweeping up the spilled food approximately one minute, forty seconds after the spill. (Defs.' Reply 56.1 ¶ 8.) Plaintiff walked back toward the cafeteria entrance/exit, observed the yellow floor sign and then slipped and fell one to two feet from the sign, approximately three minutes and twelve seconds after the spill was swept. (Defs.' 56.1 ¶ 9.) A few seconds before her fall, Plaintiff observed a sign to the left of the spot where she fell but did not observe any food or liquid on the floor. (Pl.'s 56.1 ¶ 12.) After her fall, Plaintiff felt a "slippery and greasy" spot on the floor, approximately one foot wide. (Defs.' 56.1 ¶ 13.) A hospital security guard and a response team reported to the accident location. (Defs.' Reply 56.1 ¶ 14, Pl.'s 56.1 ¶ 14.)

Plaintiff sought and received workers' compensation benefits arising from this accident. (Defs. 56.1 ¶ 2.)

### B.  Procedural History

Plaintiff initiated this Action in Supreme Court of the State of New York, County of Dutchess. (*See* Not. of Removal (Dkt. No. 1).) On September 13, 2021, Defendants filed a Notice of Removal. (*See id.*) The Court held an initial conference on February 22, 2022, during

which it adopted a Case Management Order.  (*See* Dkt. (minute entry dated Feb. 22, 2022).)  Thereafter, the Parties engaged in discovery.  (*See* Dkt.)

Defendants filed a pre-motion letter on January 30, 2022.  (Letter from Joseph Iemma, Esq. to Court (Jan. 30, 2023) (Dkt. No. 50).).  Plaintiff responded on February 6, 2023.  (Letter from Sharon Scanlan, Esq. to Court (Feb. 6, 2023) (Dkt. No. 51).)  On February 6, 2023, the Court held a pre-motion conference on February 22, 2023, during which it adopted a summary judgment briefing schedule.  (*See* Dkt. (minute entry dated Feb. 22, 2023).)

On March 27, 2023, Defendants filed their Motion and accompanying papers.  (*See* Not. of Mot.; Defs.' Mem.; Defs.' 56.1; Aff. of Joseph Iemma ("Iemma Aff.") (Dkt. No. 56).)  Plaintiff filed her opposition papers on May 1, 2023.  (*See* Decl. of Marie DuSault ("DuSault Decl.") (Dkt. No. 57-1); Pl.'s 56.1; Pl.'s Mem. of Law in Opp. to Mot. for Summ. J. ("Pl.'s Opp.") (Dkt. No. 57-3).)  On May 15, 2023, Defendants filed their Reply. (*See* Defs.' Reply Mem. of Law in Supp. to Mot. for Summ. J. ("Defs.' Reply Mem.") (Dkt. No. 59); Defs.' Reply 56.1.)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (same); *Truitt v. Salisbury Bank & Tr. Co.*, 52 F.4th 80, 85 (2d Cir. 2022) (same); *Cambridge Funding Source LLC v. Emco Oilfield Servs. LLC*, No. 22-CV-10741, 2023 WL 7405862, at *4 (S.D.N.Y. Nov. 9, 2023) (same).  "In deciding whether to award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable

inferences in its favor." *Torcivia*, 17 F.4th at 354; *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same).  "The movant 'bears the initial burden of showing that there is no genuine dispute as to a material fact.'" *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (quoting *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018)); *see also LaFontant v. Mid-Hudson Forensic Psychiatric Ctr.*, No. 18-CV-23, 2023 WL 6610764, at *7 (S.D.N.Y. Oct. 10, 2023) (same); *Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration adopted) (internal quotation marks and citation omitted); *see also U.S. Bank Nat'l Ass'n as Tr. for Reg. Holders of J.P. Morgan Chase Com. Mortg. Sec. Corp., Multifamily Mortg. Pass-Through Certificates, Series 2017-SB42 v. 160 Palisades Realty Partners LLC*, No. 20-CV-8089, 2022 WL 743928, at *3 (S.D.N.Y. Mar. 10, 2022) (same). Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that h[er] allegations were correct; [s]he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)); *see also Jennifer Fung-Schwartz, D.P.M, LLC v. Cerner Corp.*, No. 17-CV-233, 2023 WL 6646385, at *3 (S.D.N.Y. Oct. 12, 2023) (same), "and cannot rely on the mere allegations or denials contained in the pleadings,"

*Guardian Life Insurance Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (internal

quotation marks and citation omitted); *see also Kollias v. Univ. of Rochester*, No. 18-CV-6566,

2023 WL 5608868, at *4 (W.D.N.Y. Aug. 30, 2023) ("When a motion for summary judgment is

properly supported by documents or other evidentiary materials, the party opposing summary

judgment may not merely rest on the allegations or denials of his pleading." (quoting *Wright v.*

*Goord*, 554 F.3d 255, 266 (2d Cir. 2009))).

      "On a motion for summary judgment, a fact is material if it might affect the outcome of

the suit under the governing law." *Seward v. Antonini*, No. 20-CV-9251, 2023 WL 6387180, at

*12 (S.D.N.Y. Sept. 29, 2023) (quoting *Royal Crown Day Care LLC v. Dep't of Health &*

*Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014)). "At this stage, 'the role of the court is not to

resolve disputed issues of fact but to assess whether there are any factual issues to be tried.'"

*U.S. Sec. & Exch. Comm'n v. Amah*, No. 21-CV-6694, 2023 WL 6386956, at *8 (S.D.N.Y. Sept.

28, 2023) (alteration adopted) (quoting *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011)).

Therefore, "a court's goal should be 'to isolate and dispose of factually unsupported claims.'"

*Sullivan v. Nat'l Express LLC*, No. 21-CV-5789, 2023 WL 6279255, at *8 (S.D.N.Y. Sept. 26,

2023) (quoting *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004)

(quoting *Celotex Corp.*, 477 U.S. at 323–24)).

      When ruling on a motion for summary judgment, a district court should "consider only

evidence that would be admissible at trial." *Latimer v. Annucci*, No. 21-CV-1275, 2023 WL

6795495, at *3 (S.D.N.Y. Oct. 13, 2023) (citing *Nora Beverages, Inc. v. Perrier Grp. of Am.,*

*Inc.,* 164 F.3d 736, 746 (2d Cir. 1998)). "'[W]here a party relies on affidavits or deposition

testimony to establish facts, the statements must be made on personal knowledge, set out facts

that would be admissible in evidence, and show that the affiant or declarant is competent to

testify on the matters stated.'" *Mozzochi v. Town of Glastonbury*, No. 21-CV-1159, 2023 WL 3303947, at *3 (D. Conn. May 8, 2023) (quoting *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P.56(c)(4))); *see also E. Fishkill Fire Dist. v. Ferrara Fire Apparatus, Inc.*, No. 20-CV-576, 2023 WL 6386821, at *11 (S.D.N.Y. Sept. 28, 2023) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ." (internal citation omitted)); *Baity*, 51 F. Supp. 3d at 419 (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (internal citation omitted)).[2]

As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Martinez v. Pao's Cleaning, Inc.*, No. 16-CV-6939, 2018 WL 6303829, at *2 (E.D.N.Y. Dec. 3, 2018) (quoting *Jeffreys v. City of New York*, 426

---

[2] Plaintiff contends that the Court should disregard Cannon's affidavit because it fails to present admissible evidence given that it contains statements about matters outside of his personal knowledge. (*See* Pl.'s Opp. at 13–16.) The Court disagrees. The record reflects that Cannon worked as a retail manager for Morrison at MHRH from Fall of 2018 through December 2020 and previously worked directly for MHRH from 2012 until 2018. (Iemma Aff. Ex. F ("Cannon Aff.") at ¶ 1.) Cannon received training from both MHRH and Morrison and was personally familiar with the general operation of the cafeteria at MHRH in the fall of 2019. (*Id.*) Such statements regarding his first-hand experience and role in the job support his competence to speak to the matters in his affidavit. *See Giallanzo v. City of New York*, 630 F. Supp. 3d 439, 458 (S.D.N.Y. 2022) ("An affiant's conclusions based on personal observations over time . . . may constitute personal knowledge." (internal quotation marks and citation omitted)); *see also Jordan v. United Cerebral Palsy of N.Y.C., Inc.*, No. 12-CV-5715, 2016 WL 9022502, at *4 (E.D.N.Y. Mar. 31, 2016) (admitting affidavit as proper where affiant did not swear to personal knowledge, on the basis that his role as "Acting Director" of program gave him "primary knowledge" to the information in his declaration), *aff'd*, 682 F. App'x 48 (2d Cir. 2017) (summary order), *as amended* (Mar. 10, 2017); *Owens-Corning Fiberglas Corp. v. U.S. Air*, 853 F. Supp. 656, 663 & n.12 (E.D.N.Y. 1994) (admitting affidavit as proper even though affiant did not swear to personal knowledge, on the basis that her job responsibilities made her personally aware of the facts attested). Accordingly, the Court will not exclude Cannon's affidavit.

F.3d 549, 551 (2d Cir. 2005)).  However, although witness credibility is usually a question of

fact for the jury, *Yu Zhang v. Sabrina USA Inc.*, No. 18-CV-12332, 2021 WL 1198932, at *3

(S.D.N.Y. Mar. 30, 2021), "[b]road, conclusory attacks on the credibility of a witness without

more [are] insufficient to raise a genuine issue of material fact that would defeat a motion for

summary judgment," *Securities & Exchange Commission v. Airborne Wireless Network*, No. 21-

CV-1772, 2023 WL 5938527, at *6 (S.D.N.Y. Sept. 12, 2023) (internal quotation marks and

citation omitted); *see also Ezuma v. City Univ. of N.Y.*, 665 F. Supp. 2d 116, 128 (E.D.N.Y.

2009) ("If the moving party has made a properly supported motion for summary judgment, the

plaintiff may not respond simply with general attacks upon the defendant's credibility."

(alterations adopted) (internal citation omitted)).  Instead, "when opposing a motion for summary

judgment, the non-moving party . . . must identify affirmative evidence from which a jury could

find that the non-moving party has carried its burden of proof."  *Moritz v. Town of Warwick*,

No. 15-CV-5424, 2017 WL 4785462, at *8 (S.D.N.Y. Oct. 19, 2017) (alterations adopted)

(internal quotation marks and citation omitted); *see also Paul v. Postgraduate Ctr. for Mental

Health*, 97 F. Supp. 3d 141, 181 (E.D.N.Y. 2015) ("'Although credibility assessments are

improper on a motion for summary judgment,' a court may be justified in dismissing a claim

when the 'plaintiff's version of the events is in such discord with the record evidence as to be

wholly fanciful.'" (quoting *Pulliam v. Lilly*, No. 07-CV-1243, 2010 WL 935383, at *5 (E.D.N.Y.

Mar. 11, 2010))).

B.  Analysis

Plaintiff brings negligence claims against Defendants related to the incident during which

Plaintiff slipped and fell.  (*See* Compl. ¶¶ 55–56).  Defendants have moved for summary

judgment, arguing that (1) NYWCL bars Plaintiff from pursuing derivative claims against third

10

parties like Defendants when an employee is injured due to the alleged negligence of a co-worker, (*see* Defs.' Mem. at 1, 3–7), and (2) although Morrison owed certain contractual duties to MHRH regarding food-related services, such contractual duties (even if breached) generally do not give rise to a tort duty or tort liability to additional parties, and that the three narrow exceptions to this rule do not apply in this case, (*see id.* at 1–2, 7–13).  The Court considers each of Defendants' arguments in turn.

### 1.  Workers' Compensation Law

The NYWCL provides workers with a statutory remedy for injuries incurred in connection with employment, and at the same time limits availability of other remedies. Specifically, the "[NYWCL] bars employees from maintaining common-law actions to recover damages arising out of [an] employer's negligence." *Kamdem-Ouaffo v. Balchem Corp.*, No. 17-CV-281, 2018 WL 4386092, at *17 (S.D.N.Y. Sept. 14, 2018) (citing NYWCL § 29(6)); *see also Lin v. Amazon.com, Inc.*, No. 21-CV-6203, 2023 WL 5720063, at *3 (E.D.N.Y. Sept. 5, 2023) ("Under New York law, common law negligence claims arising from workplace injuries are precluded by [NYWCL], which provides the exclusive remedy for negligence claims against an employer." (internal quotation marks and citations omitted)); *Patterson v. Xerox Corp.*, 732 F. Supp. 2d 181, 194 (W.D.N.Y. 2010) (holding "negligence claims asserted against [the employer] must also be dismissed because the [NYWCL] exclusively governs negligence claims against employers"); *Johns v. Home Depot U.S.A., Inc.*, No. 03-CV-4522, 2005 WL 545210, at *8 (S.D.N.Y. Mar. 8, 2005) ("In New York, recovery for . . . injuries caused by an employer's negligence, is governed by the [NYWCL]." (internal quotation marks and citation omitted)), *aff'd sub nom.* 180 F. App'x 190 (2d Cir. 2006) (summary order).  This same exclusivity applies when an employee is injured by a co-worker.  The right to workers' compensation thus is "the

exclusive remedy to an employee . . . when such employee is injured . . . by the negligence or wrong of another in the same employ[.]"  NYCWL § 29(6); *see also Reyes v. Crothall Healthcare, Inc.*, No. 17-CV-1003, 2019 WL 1050995, at *4 (E.D.N.Y. Mar. 5, 2019) (same), *aff'd*, 794 F. App'x 132 (2d Cir. 2020) (summary order); *Isabella v. Hallock*, 10 N.E.3d 673, 674 (N.Y. 2014) (same).

Here, Plaintiff asserts that her Action can go forward, in spite of the NYWCL, because she was injured due to Defendants' own negligence.  (*See* Pl.'s Opp. at 16–17.)  The Court disagrees.  As an initial matter, it is undisputed that Plaintiff sought and received workers' compensation for her injury.  (*See* Defs.' 56.1 ¶ 2; Pl.'s 56.1 ¶ 2.)  It also is undisputed that Plaintiff and the cafeteria workers at MHRH were employed directly by MHRH, not Defendant Morrison. (*See* Defs.' 56.1 ¶ 4; Pl.'s 56.1 ¶ 4.)  Moreover, the record indisputably demonstrates that it was an MHRH employee who swept up the spilled food and another MHRH employee who placed a yellow floor sign in the vicinity of the spill.  (*See* Defs.' 56.1 ¶¶ 6, 8; Pl.'s 56.1 ¶ 6, 8; *see also* Iemma Aff. Ex. D (Cafeteria Surveillance Footage) at 3:50–5:22.)

Nevertheless, Plaintiff claims that the Defendants are independently liable for their own supposed negligence with regard to their actions and omissions as to the cafeteria premises.  (*See* Pl.'s Opp. at 16–17.)  For example, Plaintiff asserts that Defendants caused and/or permitted the slippery conditions by failing to provide for adequate food containers, by failing to provide "nonskid" flooring, by hiring "inept" employees, and creating a "trap."  (*Id.* at 17.)  These claims all fail, as Plaintiff cites nothing in the record that supports them.  Plaintiff offers no expert testimony about the defect in the food containers or the negligence in not having "nonskid" floors, let alone that these were decisions made by Defendants.

In addition, Plaintiff seems to contend that Defendant's retail manager, Cannon, is independently liable for his alleged negligence in supervising the placement of the yellow sign and the clean-up.  In particular, Plaintiff argues that Defendants were physically present and participated in the handling of the food spill at issue.  (See *id.* at 17.)  However, the surveillance video, depicting the entire incident, clearly demonstrates that Cannon, Defendants' retail manager, was only present for a brief part of the incident, during which he viewed the spill, handed a broom to a MHRH employee, and walked away from the scene as the MHRH employee cleaned up the spill.  (*See* Iemma Aff. Ex. D (Cafeteria Surveillance Footage) at 3:45–4:00, 4:27–4:39; *see also id.* Ex. E (Cannon Depo.) at 104:14–16 (Cannon noting that with regard to cleaning up the spill, he "typically wouldn't do any of [MHRH employees'] work, as they are union employees that work for the hospital").)  From this irrefutable video evidence, Plaintiff has failed to meet her burden of establishing how it was that Cannon was negligent. Cannon did not cause the spill, did not direct the placement of the yellow sign, and did not supervise the clean-up effort.  Nor does Plaintiff develop a basis to hold Defendants liable based on a theory that his lack of supervision was somehow and independent cause of Plaintiff's injuries.  Instead, Plaintiff is attempting to hold Defendants liable based on a theory of vicarious liability (in spite of denying that she is doing so).  However, the New York Court of Appeals and lower New York state courts have rejected such a theory as a way around the limits imposed by the NYWCL.  *See Isabella,* 10 N.E.3d at 678 ("[W]e hold that a defendant may not pursue a third-party contribution claim under the under Vehicle and Traffic Law § 388 against a vehicle owner where the driver's negligence was a cause of the plaintiff's injuries, but the driver is insulated from a lawsuit under Workers' Compensation Law § 29(6).");  *Rauch v. Jones*, 152 N.E.2d 63, 65 (N.Y. 1958) (holding that the NYWCL, "having deprived the injured employee of

a right to maintain an action against a negligent coemployee, bars a derivative action which necessarily is dependent upon the same claim of negligence for which the exclusive remedy has been provided.").

Here, the record indisputably demonstrates that Plaintiff's injuries were the result of MHRH employees' negligence.  Moreover, the record fails to create a dispute about how Defendants' conduct was negligent, let alone how the alleged conduct was a cause of Plaintiff's injuries.  Thus, having recovered damages under the NYWCL, Plaintiff cannot recover from Defendants for the injuries caused by fellow MHRH employees.  *See Williams v. Crothall Healthcare, Inc.*, No. 17-CV-1011, 2020 WL 13561970, at *1 (S.D.N.Y. June 9, 2020) (granting summary judgment where plaintiff sought damages in the action for injuries arising from the hospital's housekeeping staff's, not defendant's, negligence and therefore, "[NYWCL] provide[d] [plaintiff's] exclusive remedy"), *report and recommendation adopted*, No. 17-CV-1011, 2020 WL 13561969 (S.D.N.Y. Oct. 7, 2020); *Reyes*, 2019 WL 1050995, at *8 (granting summary judgment to the hospital's housekeeping management services provider under the NYWCL, where plaintiff hospital employee slipped and fell on wet hallway floor, where the facts established that the housekeepers were hospital employees, even though defendant was under contract with the hospital); *cf. Santorelli v. Crothall Services Group, Inc.*, No. 15-CV-978, 2017 WL 728227, at *8 (E.D.N.Y. February 23, 2017) (denying summary judgment to defendant, the hospital's housekeeping management services provider, against hospital employee who slipped and fell on wet floor, where the court found that there were disputed issues of material fact as to whether the employee who created the wet floor was a special employee of defendant, such that defendant could separately be held liable.).

14

## 2.  Independent Tort Duty

Plaintiff also asserts that Defendants independently owed Plaintiff a duty to maintain the MHRH cafeteria floors.  (*See* Compl. ¶¶ 50–51.)  The Court is unpersuaded.[3]

"[U]nder New York law, 'a finding of negligence must be based on the breach of a duty,' and thus a 'threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party.'"  *Chacko v. Costco Wholesale Corp.*, 568 F. Supp. 3d 487, 498 (S.D.N.Y. 2021) (quoting *Espinal v. Melville Snow Contractors*, 773 N.E.2d 485, 487 (N.Y. 2002)).  "A contractual obligation, standing alone, will generally not give rise to tort liability in favor of a third party."  *Lynn-Ford v. Shores*, No. 21-CV-169, 2023 WL 6133047, at *7 (N.D.N.Y. Aug. 28, 2023) (alteration adopted) (quoting *Espinal*, 773 N.E.2d at 487).  However, there are three exceptions to this general rule adopted by the New York Court of Appeals, under which a duty to a third party may arise, including: "(1) where the contracting party, in the course of performing its duties, fails to exercise reasonable care, thereby launching a 'force or instrument of harm'; (2) where plaintiff 'detrimentally relies on the continued performance of the contracting parties' duties'; and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely."  *Guest v. First Republic Corp. of Am.*, 618 F. Supp. 3d 86, 90 (N.D.N.Y. 2022) (quoting *Espinal*, 773 N.E.2d at 488).

Here, it is undisputed that the food services contract existed between MHRH and Defendants.  (*See* Defs.' 56.1 ¶ 3; DuSault Decl. Ex. E (Contract) at 1.)  It is further undisputed that Plaintiff was not a party to either of these agreements.  (*See* DuSault Decl. Ex. E (Contract).)

---

[3] Although the Court has already determined above that Plaintiff's injuries were the result of MHRH employees' negligence, and that there are no material issues as to the fact that Defendants were not independently liable, (*see supra* Section II.B.1), the Court, for argument sake, still addresses Plaintiff's claims concerning the Defendants' alleged independent tort duty.

Accordingly, under New York law, such a contract does not give rise to a duty owed by Defendants to Plaintiff. *See Lynn-Ford*, 2023 WL 6133047, at *7. Moreover, even considering the three *Espinal* exceptions, the Court concludes that no such duty exists.

### a. First *Espinal* Exception

With regard to the first exception, the record does not demonstrate that Defendants launched an instrument of harm, such that Defendants "create[d] or exacerbate[d] a dangerous condition." *Espinal*, 773 N.E.2d at 489. Plaintiff attempts to assert that Defendants caused and/or permitted the slippery conditions in the cafeteria by failing to provide for adequate food containers, by failing to provide "nonskid" flooring, by hiring "inept" employees, and creating a "trap." (Pl.'s Opp. at 17.) However, as noted above, these claims all fail because Plaintiff does not cite anything in the record to support such contentions. *See supra* Section II.B.1. Moreover, although Defendants entered into a contract providing food-related services and managers for MHRH's cafeteria and cafeteria staff, none of Defendants' employees caused nor participated in cleaning the relevant spill in the cafeteria. (*See* Defs.' 56.1 ¶¶ 6, 8; Pl.'s 56.1 ¶ 6, 8; *see also* Iemma Aff. Ex. D (Cafeteria Surveillance Footage) at 3:45–5:22; *id.* Ex. E (Cannon Depo.) at 104:14–16 (Cannon testifying that "typically wouldn't do any of [MHRH employees'] work, as they are union employees that work for the hospital"). In fact, as discussed above, the undisputed fact is that MHRH's cafeteria staff performed the cleanup, not Defendants' employees. *See supra* Section II.B.1. In short, there is no evidence in the record to suggest that Defendants' employees created or exacerbated the conditions that caused Plaintiff's fall.

Accordingly, the first *Espinal* exception does not apply. *See Williams*, 2020 WL 13561970, at *7 (holding that the first *Espinal* exception did not apply because the evidence showed that the hospital housekeepers performed all mopping activity and that the hospital's

housekeeping management services provider's supervisors never engaged in such activity, and that there was no evidence to demonstrate that service provider created or exacerbated the condition leading to the fall); *see also Reyes*, 2019 WL 1050995, at *9 (concluding that the first *Espinal* exception did not apply because "although [defendant] entered into a contract to render supervisory services relating to [the hospital's] housekeeping employees, none of [defendant's] managers actually cleaned the hospital themselves and therefore could not have launched any force or instrument of harm").

### b.  Second *Espinal* Exception

As to the second exception, there is no evidence that Plaintiff detrimentally relied on Defendants' contractual duties at MHRH.  "To establish detrimental reliance, the plaintiff must have knowledge of the contract at issue; the performance of contractual obligations must induce the plaintiff to rely on continued performance; and the defendant's failure to perform those obligations must injure the plaintiff."  *Williams*, 2020 WL 13561970, at *8 (citing *Doona v. OneSource Holdings, Inc.*, 680 F. Supp. 2d 394, 402–03 (E.D.N.Y. 2010) and *O'Keefe v. Arbon Equip. Corp.*, 399 F. Supp. 2d 478, 485 (S.D.N.Y. 2005)).

Here, the record does not reflect that Plaintiff detrimentally relied on Defendants' contractual duties to MHRH.  In fact, the undisputed evidence demonstrates that, at the time of the accident, Plaintiff was unaware of any contract between Defendants and MHRH.  (*See* Iemma Aff. Ex. C. (Plaintiff Depo.) at 19:21–24 (counsel asking Plainitff "Were you aware of any contract that Morrison or Compass would've had with the hospital?" and Plaintiff responding "No.").  Therefore, the second *Espinal* exception does not apply. *See Gonzalez v. Gotham Org. Inc.*, No. 16-CV-607, 2022 WL 875066, at *2 (E.D.N.Y. Mar. 24, 2022) ("The second exception does not apply because [plaintiff] was not even aware of [defendant's]

contractual obligations."); *Williams*, 2020 WL 13561970, at *8 (concluding that second *Espinal* exception did not apply, where plaintiff had no knowledge of defendant or its contractual duties under the defendant's contract with the hospital); *Doona*, 680 F. Supp. 2d at 403 (granting summary judgment on second *Espinal* factor in favor of provider of janitorial services against plaintiff who slipped on wet spot in bathroom because "there [was] nothing to suggest that [plaintiff] was aware of [defendant's] contract with [plaintiff's employer] . . . .").

### c.  Third *Espinal* Exception

Finally, concerning the third exception, the Defendants did not entirely displace MHRH's duty to safely maintain the premises.  Such a showing would require the record to reflect that MHRH's contract with Defendants was "a comprehensive and exclusive set of obligations which the parties could have reasonably expected to displace the owner's duty to maintain the premises safely."  *Reyes*, 2019 WL 1050995, at *10 (citing *Hagen v. Gilman Mgmt. Corp*, 770 N.Y.S.2d 890, 891 (App. Div. 2004).  To support its case, Plaintiff asserts that Cannon was in charge of the cafeteria and directly involved in its operations.  (Pl.'s 56.1 ¶ 15.)  Moreover, Plaintiff points to various provisions in the contract between Morrison and the Hospital, which state that the contractor must provide services in a manner consistent with industry standards, including standards of care, and set forth the division of responsibility between the parties for maintaining the facilities in clean, orderly and sanitary condition.  (*See id.* at ¶ 31.)

Despite Plaintiff's contentions, the record reflects that Plaintiff does not meet the high bar to meet the third *Espinal* exception.  As an initial matter, Plaintiff's own argument, which contends that the contract sets forth a division of responsibility between Morrison and MHRH, explicitly admits that the Defendants did not entirely displace MHRH's duty to safely maintain the premises.  (*See id.* at ¶ 31; *see also* DuSault Decl Ex. 5 at Ex. C (Sanitation Responsibility

Exhibit) (stating that "Compass and [MHRH] shall share responsibility for maintaining the Facilities in clean, orderly and sanitary condition . . . .").)   Moreover, the evidence demonstrates that the cafeteria staff workers at MHRH were employed directly by MHRH, not Morrison.  (*See* Iemma Aff. Ex. E. (Cannon Depo.) at 31:23–32:6.)  The MHRH cafeteria workers wore uniforms selected by MHRH.  (*See id.* Ex. G (Horton Depo.) 96:10–97:12; *see also* DuSault Decl. Ex. 2 (Cannon Depo.) at 84:17–19 (Cannon noting that MHRH selected the blue color of the shirts that the cafeteria staff were wearing).)   Additionally, MHRH was directly involved in the hiring, firing, and staffing assignments for its cafeteria workers.  (Iemma Aff. Ex. F (Cannon Aff.) ¶ 4; *see also id.* at Ex. G (Horton Depo.) at 40:8–15; *id.* at Ex. E. (Cannon Depo.) at 71:11–17.)  Morrison also participated, but Morrison could not hire, fire, or reassign the hospital's workers without MHRH agreeing to do so.  (Iemma Aff. Ex. F (Cannon Aff.) ¶ 4.)

More specifically, as already discussed above, despite Defendants' managers being onsite, MHRH cafeteria staff would perform specific tasks, such as cleaning, if needed.  For example, prior to Plaintiff's slip and fall incident, it was an MHRH employee, not Defendants or their agents, who placed the yellow floor sign in the vicinity of the spill and another MHRH employee who swept up the spilled food.  (*See* Iemma Aff. Ex. D (Cafeteria Surveillance Footage) at 3:50–5:22.)  The yellow floor signs were owned by MHRH and the MHRH employees could move the signs as they saw fit.  (*See id.* at Ex. E (Cannon Depo.) at 63:5–20.)

In short, MHRH reserved substantial control over the maintenance of its premises and its employees actively participated in their upkeep.  While Defendant's employees may have had some supervisory authority in running the cafeteria, there is no evidence that they entirely displaced MHRH's duty to maintain the premises safely, and therefore, the third *Espinal* exception does not apply.  *See Merriweather v. Crothall Healthcare, Inc.*, No. 17-CV-653, 2019

19

WL 6498712, at *10 (S.D.N.Y. Dec. 2, 2019) (finding that hospital retained its duty to inspect areas prior to removing wet floor signs and, thus, defendant did not entirely absorb hospital's duty to maintain the premises safely); *see also Collado v. Crothall Healthcare, Inc.,* No. 17-CV-3078, 2017 WL 6502230, at *4 (S.D.N.Y. December 15, 2017) ("[G]iven the fact that [the hospital's housekeeping management services provider] did not provide security services or maintenance services, and did not entirely take over the housekeeping services, no reasonable juror could find that [the service provider] 'wholly absorbed' HHC's duty to maintain its premises safely." (quoting *Doona*, 680 F. Supp. 2d at 403)); *Perkins v. Crothall Healthcare, Inc.*, 51 N.Y.S.3d 118, 120 (App. Div. 2017) (holding that the evidence established that hospital "did not surrender control of its housekeeping staff, including the housekeeping supervisor involved in this incident, as it, inter alia, paid the staff's wages and had the final decision-making power to hire, discipline, or fire any of its members" and thus, defendant did not entirely displace the hospital's duty to maintain the hospital in a safe manner); *Schmidt v. Promaster Cleaning Serv., Inc.*, 721 N.Y.S.2d 680, 681 (App. Div. 2001) (noting that contract at issue "was a limited undertaking for the performance of various cleaning services, and was not a comprehensive maintenance obligation that would create a duty to the injured plaintiff").

.     .     .

Thus, because none of the three *Espinal* exceptions applies, the Court concludes that the Defendants did not independently owe Plaintiff a duty to maintain the MHRH cafeteria floors, and therefore, Plaintiff's claims are dismissed.

III.  Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.  The

Clerk of Court is respectfully directed to terminate the pending Motion, (*see* Dkt. No. 54), enter

judgment for Defendants, and close this case.

SO ORDERED.

Dated:   March 4, 2024
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge